UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER HAYES, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THOR MOTOR COACH, INC.,<br><br>Defendant. | CAUSE NO. 3:19-CV-00375 DRL-MGG |

OPINION & ORDER

Jennifer Hayes alleges that Thor Motor Coach, Inc. violated the Fair Labor Standards Act and Indiana law by diluting her overtime wages. She seeks conditional certification under 29 U.S.C. § 216(b) for two proposed classes. The court grants her motion for conditional certification, though limited in accordance with this opinion.

BACKGROUND

The parties have conducted limited written discovery. That said, the following facts emerge from the amended complaint and evidence submitted by both parties.[1]

Thor is a motorhome manufacturing company that has employed hundreds of non-exempt employees during the last three years. Ms. Hayes began working for Thor in March 2015 at its Bristol, Indiana and Elkhart, Indiana plants as a manufacturing employee. As a non-exempt employee, she regularly worked in excess of 40 hours per workweek. She voluntarily resigned in December 2017.

---

[1] Ms. Hayes submitted the following: (1) affidavits from herself, Vicki Metzger, Angela Sickafus, and Akida Walker, (2) Thor's objections and answers to her interrogatories, (3) excerpts from Thor's employee handbook, (4) her payroll reports, (5) Scott Sanders' paystub and Akida Walker's payroll summary, (6) her own payroll deduction receipt, and (7) Akida Walker's payroll summary. Thor submitted (1) a declaration from Jeff Newport, Vice President of Operations at Thor, (2) declarations from Thor employees Deborah Dubois, Riley Simpson, George Mosley, and Monte Taylor, (3) declarations from Thor supervisors Fredrick Jenkins, Brian Zent, Kip Allen, Herman Wiley, and (4) a declaration from Gavin Wilkinson, Director of Finance at Thor.

During her shifts, Ms. Hayes clocked in at the beginning of her workday and clocked out at the end. She says she was paid based on the number of units she completed—known as piece-rate pay. The time she spent completing units was considered productive time, while the time she spent waiting to perform her manufacturing duties was non-productive time. She estimates she spent at least ten percent of her work time in non-productive hours.

Ms. Hayes claims that Thor didn't pay her for non-productive time. She says she didn't have an agreement with Thor to pay her only for productive time. Furthermore, when she worked overtime, she asserts that Thor paid her only one-half premium for overtime hours, instead of one and one-half times the regular rate.

For example, Ms. Hayes says she was paid $884.36 one week (pay period ending May 20, 2017). She worked a total of 50.57 hours in that work week. For her regular work, she was paid a lump sum wage of $800.68. For overtime, she was paid $83.68 for 10.57 overtime hours. She says this rate would equate to overtime pay at roughly $7.92 per hour, or half the premium she says she deserved. She also alleges the $884.36 failed to cover all her non-productive time. If it had, she claims her total wages for that week would have been $982.60.

Ms. Hayes also complains that Thor made various unlawful payroll deductions for tools, equipment, and drug screen costs. On her paystubs, these deductions were categorized as "purchase," "drug test," and/or "sales tax purchase." Ms. Hayes alleges that these deductions improperly cut into her overtime wages. She also says Thor never secured an agreement or wage assignment containing the required language that informed her it was revocable at any time.

As an example, Ms. Hayes was paid $955.48 for one week (pay period ending September 2, 2017). She worked 44.77 total hours that week. As alleged, from her overtime pay, Thor took deductions for "purchase" in the amount of $9.22 and "tax" in the amount of $0.65, for a total of $9.87. Thor made these deductions for the olfa knives the company required Ms. Hayes to use.

2

During the three years predating this lawsuit, Ms. Hayes says Thor employed and continues to employ numerous other workers with substantially similar job requirements and pay. Thor's pay system allegedly includes paying employees for productive hours only, reducing overtime premiums in half (rather than one and one-half regular rate), and making unauthorized deductions. Ms. Hayes thus requests this case be conditionally certified as a collective action under 29 U.S.C. § 216(b). On August 13, 2020, the court held oral argument on the motion after addressing Thor's second motion to dismiss.

## DISCUSSION

The FLSA allows an employee to pursue a claim for unpaid overtime compensation through a collective action for her and other "similarly situated" employees. 29 U.S.C. § 216(b); *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010). A collective action is similar to, but distinct from, a class action under Federal Rule of Civil Procedure 23. "The principle difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez*, 605 F.3d at 448; *see* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). The court has discretion under 29 U.S.C. § 216(b) to facilitate notice of a conditional collective action to those "similarly situated" to Ms. Hayes. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989).

Though the FLSA leaves "similarly situated" undefined, most courts take a two-step approach in determining whether other employees are similarly situated to the plaintiff. *Dominguez v. Don Pedro Rest.*, 2007 U.S. Dist. LEXIS 6659, 4 (N.D. Ind. Jan. 25, 2007) (Rodovich, J.). At the first step, before discovery, the plaintiff has the burden to submit affidavits or other evidence to make a "modest

3

showing" that she is "similarly situated" to other employees. *Sagendorf v. Quality Huts, LLC*, 2019 U.S. Dist. LEXIS 52739, 5 (N.D. Ind. Mar. 28, 2019) (Simon, J.). This burden, though modest, cannot be met merely with the complaint's allegations. *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 7; *cf. Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015) (analyzing allegations under Rule 23) ("This does not mean, however, that on issues affecting class certification, a court must simply assume the truth of the matters as asserted by the plaintiff.").

The second step to certification occurs after discovery—permitting the defendant to seek decertification of the class. The class is then held to a more stringent standard. *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 7; *see also Espenscheid*, 705 F.3d at 772 ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23 . . . there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.").

The parties agree that Ms. Hayes' motion is brought under the first step analysis, which is a lower burden for her when brought at the early stages of a case. When discovery has already been conducted, courts generally apply more scrutiny to the plaintiff's claims. *See Boelk v. AT&T Teleholdings, Inc.*, 2013 U.S. Dist. LEXIS 20606, 40 (W.D. Wis. Jan. 10, 2013); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (applying "intermediate level of scrutiny" to conditional certification where substantial discovery had been conducted but was not yet complete); *Scott v. NOW Courier, Inc.*, 2012 U.S. Dist. LEXIS 43710, 24 (S.D. Ind. Mar. 29, 2012) (same). This sliding scale, what some courts have called a "modest plus" showing, recognizes that the plaintiff has had the benefit of some discovery to present a case of similarly situated employees.

The parties here have conducted limited written discovery, including the production of "interrogatory responses, payroll summaries, pay stubs, payroll deduction authorizations, and [Thor's]

4

employee handbook." ECF 57 at 11. They agreed at oral argument that Ms. Hayes must make a modest plus showing that the proposed class members are similarly situated to her, which is commensurate to the level of discovery conducted in this case.

Her factual showing must be "sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Ahad*, 2017 U.S. Dist. LEXIS 160584, 3 (C.D. Ill. Sep. 28, 2017) (quoting *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014)). The plaintiff need only supply "an affidavit, declaration or other support beyond allegations in order to make a minimal showing of other similarly situated [individuals] subjected to a common policy." *Id.* at 4 (citing *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011)). "This evidence must demonstrate a factual nexus that binds the plaintiffs together as victims of a particular violation of the FLSA, although a unified policy, plan, or scheme . . . is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus." *Id.* (quotations omitted).

> To begin, Ms. Hayes proposes conditionally certifying two collective actions under the FLSA:
>
> All current and/or former employees of Defendant who work/worked for Defendant as non-exempt manufacturing employees in the United States, are/were paid on a piece rate basis, and who worked 40 or more hours in at least one workweek during the period from May 10, 2016 through the disposition of this matter ("FLSA Piece-Rate Class"); and
>
> All current and/or former employees of Defendant who were subjected to one or more wage deductions taken by Thor for costs of tools, equipment and drug tests in categories Thor called "Purchase," "Sales Tax Purchase" and "Drug Test" on employee paystubs in at least one workweek during the period from May 10, 2016 through the disposition of this matter. ("FLSA Deduction Class").

ECF 48. Ms. Hayes bears the burden of demonstrating that these potential class members are similarly situated to her in light of the framed FLSA violations. *See Vazquez v. Ferrara Candy Co.,* 2016 U.S. Dist. LEXIS 110554, 10 (N.D. Ill. Aug. 19, 2016).

Thor argues against certification saying Ms. Hayes hasn't demonstrated a company-wide and unlawful policy of paying its employees piece-rate pay or that the wage deductions were unlawful under the FLSA.

> A. *For the Proposed Piece-Rate Class, Ms. Hayes Has Made a Modest Plus Factual Showing that Others are Similarly Situated to Her.*

On Thor's motion to dismiss, the court and Thor had to accept Ms. Hayes' allegations as true; and, by doing so, Thor argued that it paid Ms. Hayes lawfully under a piece-rate compensation system. Here, though, the court doesn't rely on her allegations. The parties are free to submit affidavits and other evidence, and both sides have done so. Thor submits evidence that its employees weren't paid piece-rate and argues Ms. Hayes has failed to show that it subjected its employees to a common policy (of piece-rate pay) that violates the FLSA. *See Vazquez*, 2016 U.S. Dist. LEXIS 110554 at 10.

Thor's switch from southpaw to orthodox mid-bout ultimately has no effect on the motion for certification, as there is conflicting evidence on this record concerning Thor's method (or methods) of compensation and whether one would be considered piece-rate. The FLSA doesn't define "piece-rate." *Alvarado v. Corp. Cleaning Serv., Inc.*, 2013 U.S. Dist. LEXIS 163894, 20 (N.D. Ill. Nov. 18, 2013). "In a piece-rate system a worker is paid by the item produced by him: so much per scarf, for example, if his job is to make scarves . . . . Thus the scarf worker is paid for making scarves even if they haven't been sold—that is, even if he's producing for inventory." *Alvarado v. Corp. Cleaning Servs.*, 782 F.3d 365, 367 (7th Cir. 2015). Paying an employee by piece-rate involves paying by the job or by the product. *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F. Supp.2d 682, 688 (E.D. Wis. 2007). But, "the nomenclature is not determinative," as there are real differences between compensation systems. *Alvarado*, 782 F.3d at 367.

Thor submits evidence of a different payment system—one based on a production incentive rate. Four Thor employees submitted affidavits describing this compensation system. One employee who has worked at Thor's Wire Harness Plant in Elkhart, Indiana since 2013 stated: "[t]he production-

6

incentive compensation was explained to me . . . . There is a plant-wide weekly production-incentive 'rate' that is set weekly, and the plant supervisors or plant managers tell [the employees] what the rate is each week." ECF 57-2 ¶¶ 2-3; *see also id.* at 4, 6, 8 (same). According to these employees, they are paid based on a percentage of the production incentive rate and are told what that percentage is. The company's percentage is discretionary and can be adjusted higher or lower based on factors unique to each employee, including productivity. For all overtime hours, Thor employees on the production incentive compensation system are paid an additional one-half of an hourly rate calculated by dividing their individual production incentive rate for the week by the total hours worked. Four Thor supervisors attest to this method of compensation and say they explained this system to each employee. *See* ECF 57-3.

Thor also points to its employee handbook: "All full-time direct labor manufacturing employees are eligible to participate in the production incentive program based upon their supervisor's evaluation of the employee's performance." ECF 48-4 at 5. "Any incentive plan is discretionary and all or a portion of incentive pay may be forfeited due to poor attendance." *Id.* This is not particularly helpful for Thor—at least in precluding any other compensation system at the company. This production incentive program remains dependent on an employee's eligibility, subject to a supervisor's evaluation of her performance. It too proves subject to discretion and forfeiture. This language suggests that an employee might not be eligible or might lose the right to participate in this compensation system; so, it begs the question of what other compensation methods are available to employees—specifically to those who aren't eligible for that plan or who lose their right to participate. *See, e.g., Russell v. Ill. Bell Tel. Co.*, 575 F. Supp.2d 930, 935 (N.D. Ill. 2008) ("[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime."); *see also Nehmelman*, 822 F. Supp.2d at 753 (existence of a policy "does not conclusively establish that the [defendant] pays

employees in compliance with the FLSA"). At oral argument, Thor admitted that at least one other compensation system (hourly pay) exists.

Thor's director of finance, Gavin Wilkinson, submitted an affidavit but only described how the company applies deductions. This would seemingly have been an easy opportunity for Thor to explain its compensation system or systems. Odd that he didn't do so—though even if he did, it wouldn't diminish Ms. Hayes' showing at this stage for which she has the burden. In response, Thor hasn't adduced unequivocal evidence of the existence of but one compensation system throughout all its plants that complies with the FLSA. *See infra.*

Ms. Hayes has made a sufficient (modest plus) showing of a different common pay plan. She has produced four affidavits from Thor employees, three from employees other than her, who worked at either Thor's Bristol, Elkhart, or Wakarusa facilities. They all swear to being told by their supervisors that the harder they worked the more money they would make. "Thor paid me and others like me on some type of rate basis." ECF 48-2 at 2. This alone isn't inconsistent with Thor's position, but they expound on this by saying that Thor "paid us based only on the units that were completed." *Id.* All four employees say the rate-based wages were never explained to them and there was no agreement or understanding with Thor to pay them this way. Ms. Hayes and the other purported class members say they have spoken to and observed others who were paid the same as them. In fact, a dozen others have opted into the suit (presumably to address any statute of limitations), should the court conditionally certify the claims.

Thor attacks the sufficiency of these four affidavits. Specifically, Thor says the affiants don't disclose where they worked, their job duties, or the identities of any supervisor—so the company says Ms. Hayes hasn't sufficiently established others similarly situated to her. But, "[w]hether the potential plaintiffs share similar employment settings is more properly considered during Step 2, when the [c]ourt considers whether to certify the class or to decertify the conditional class." *Ahad*, 2017 U.S.

8

Dist. LEXIS 160584 at 9. At this step one, it is sufficient for Ms. Hayes to "show[] some factual nexus [that] connects her to other potential plaintiffs as victims of an unlawful practice." *Id.* (quotations omitted).

Ms. Hayes also submits affidavits of three other employees who were paid the same as her. They say they (1) were paid on a rate basis, (2) were told they would earn more money by working harder, (3) believed they were paid for each unit, (4) never had an agreement with Thor to be paid for productive hours only, (5) never were told the formula used to calculate their overtime wages, and (6) worked more than 40 hours in many workweeks. Despite Thor saying otherwise, the affiants disclose the locations of the facilities where they worked in Indiana: three in Elkhart (including Ms. Hayes), one in Bristol (Ms. Hayes), and one in Wakarusa. *See* ECF 48-2. It can be reasonably inferred that all the affiants had at least similar job duties as manufacturing employees—namely, manufacturing production: "Thor paid me and others like me only for production time, which means they paid us based only on the units that were completed." ECF 48-2 at 4; *see also* ECF 48 (describing proposed piece-rate class as only including "non-exempt manufacturing employees"). Having different supervisors doesn't negate, at this stage, Ms. Hayes' showing that there existed others paid the same as her. At least three individuals other than Ms. Hayes, across different Thor facilities, worked as manufacturing employees and allege the same pay system.

Ms. Hayes' affidavits, coupled with Thor's handbook describing the incentive production program as "discretionary" and based on eligibility, are enough to establish Ms. Hayes' early burden here. The credibility of Ms. Hayes and her supporting affiants—which Thor is essentially attacking—cannot be decided at this stage. *See Nehmelman*, 822 F. Supp.2d at 760 ("At step one of the certification analysis, however, it is not proper for the [c]ourt to assess the credibility of statements made in plaintiff['s] declaration.") (quotations omitted).

9

Thor's discovery responses only further cloud the issue. For example, in Thor's answer to Ms. Hayes' second interrogatory, the company states: "Each week, the [Thor] accounting department calculates the *piece rate*, also known as the weekly production incentive rate, for each [Thor] plant. The production incentive rate is based on a variety of factors, including but not limited to production output, production costs, and historical plant data." ECF 48-3 at 4-5 (emphasis added). In another discovery response, Thor said "yes" when asked whether certain phrases in the employee handbook referred to piece-rate wages paid to Ms. Hayes, Leonard Cook, Akida Walker, Hope Lower, and Jason Haste. *Id.* at 15. These responses may not prove at the decertification stage, once discovery has explained the system in full, to be wholly inconsistent with the production incentive system described by Thor's employees and supervisors who provided affidavits. Still, though a name alone isn't determinative, *see Alvarado*, 782 F.3d at 367, the fact that Thor calls it "piece-rate," particularly when employees' rates are adjustable based on productivity output, doesn't eliminate the conclusion that the system, or a system, is indeed piece-rate.

The court sees no problem with conditionally certifying a class for all "non-exempt manufacturing employees in the United States, [who] are/were paid on a piece rate basis" even if, in reality, some of Thor employees are paid according to its (non-piece-rate) production incentive program. Full discovery will either produce other plaintiffs who were paid piece-rate, similar to Ms. Hayes and her three supporting affiants' allegations (and those 15 or so employees who wish to opt into the suit), or it will produce no one. Thor says: "To put it another way, if the [c]ourt were to order notice to [Ms. Hayes'] proposed class . . . the Notice would be sent to no current or former employees." ECF 57 at 15. Then let discovery prove that; but, on this record, Ms. Hayes has met her early (modest plus) burden at this stage that at least three others were potentially paid piece-rate in violation of the FLSA. *See Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 1 (conditionally certifying class after plaintiff and three others submitted affidavits in support); *Boyd v. Jupiter Aluminum Corp*, 2006 U.S. Dist. LEXIS

35654, 5 (N.D. Ind. May 31, 2006) (relying on submission of three employees' affidavits in certifying opt-in class); *cf. Powers v. Centennial Communs. Corp.,* 679 F. Supp.2d 918, 922 (N.D. Ind. 2009) (evidence of only the plaintiff's payment irregularities was not enough to show there were victims of a common policy or plan that violated the law).

Alternatively, Thor argues that even if the compensation system were piece-rate, Ms. Hayes hasn't demonstrated a common unlawful policy. This would inevitably lead the court to make a determination on the merits, which it cannot do at this stage. *See Bergman*, 949 F.Supp.2d at 856; *Nehmelman*, 822 F. Supp.2d at 751. The FLSA allows employees to be paid at piece-rate for all time worked (productive and nonproductive), *see* 29 U.S.C. § 207(g), as long as it is understood by the parties that the employee is being compensated for all hours worked, *see* 29 C.F.R. § 778.318(c). Ms. Hayes swears that no agreement existed and produced three declarations from other employees that say the same. ECF 48-2 at 3, 5, 8, 10. The court is not sure how Ms. Hayes should have produced something that she claims doesn't exist, other than by sworn statements of employees saying it doesn't exist. Moreover, that these employees all claim they were subjected to the same compensation system presupposes the commonality of a company policy. If Thor had information of an agreement or understanding to the contrary, it was free to submit it. But at this stage, Ms. Hayes only needed to show that others are similarly situated to her, and she has. *See Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 9 ("whether the policies at the [defendant's] restaurants actually violated the FLSA is a question for later stages of this case").

> B. *For the Proposed Deductions Class, Ms. Hayes has Made a Modest Plus Factual Showing that Others are Similarly Situated to her for Purchase and Sales Tax Deductions, but not for Drug Test Deductions.*

Thor has submitted evidence seeking to show that its purchase, sales, and drug test deductions were lawful. At this stage, the court won't decide substantive issues on the merits of the FLSA allegations. *Bergman*, 949 F.Supp.2d at 855-56; *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429,

433 (S.D. Ill. 2012); *Dominguez*, 2007 U.S. Dist. LEXIS 6659 at 9. The court's inquiry remains on whether Ms. Hayes has shown that others are similarly situated in that they encountered the same deductions that she alleges were unlawful.

Ms. Hayes presents her payroll summary and one from Akida Walker. ECF 48-5, 48-8. She also submits a representative pay stub for Scott Sanders. ECF 48-6. From January 1, 2012 to December 31, 2019, Thor made purchase and tax deductions to Ms. Hayes' pay in approximately 20 different weeks, though working overtime in only some weeks. ECF 48-5 at 6. She received one so-called drug deduction during a week she worked overtime. Akida Walker's payroll summary from November 2016 to April 2017 reflects one drug line item but no purchase or tax deductions in a week he worked overtime. ECF 48-8 at 2. Scott Sanders' paystub from February 25, 2018 to March 3, 2018 reflects a purchase deduction ($27.50) and a tax deduction ($1.94) for a week he worked 46.32 hours. ECF 48-6 at 2.

For the purchase and tax deductions, Ms. Hayes has only submitted evidence of an allegedly unlawful kickback as applied to her and Scott Sanders. This would ordinarily not meet her step one certification burden. That said, Thor provides additional facts tending to show there are other employees similarly situated to Ms. Hayes affected by purchase and sales tax deductions. Thor's Director of Finance says "[Thor] permits employees to pay for tools . . . by deducting the purchase price and sales tax from their wages . . . [and] [t]hese deductions are then reflected on the employees' paystubs as 'Purchase' and 'Sales Tax Purchase.'" ECF 57-4. Thus, at least for purposes of this early record, the evidence submitted (by both parties) shows that the company had a common policy to subject its employees to purchase and sales tax deductions, similar to those made to Ms. Hayes' pay. The merits of those claims, and whether they are violative of the FLSA, will be decided at a later stage.

No such evidence or admission exists for the drug test deduction. For that alleged deduction, Ms. Hayes' and Mr. Walker's paystubs fall short of showing any type of common policy or plan among

12

employees. *See Flores v. Lifeway Foods, Inc.,* 289 F. Supp.2d 1042, 1046 (N.D. Ill. 2003) ("a demonstration of [the defendant's] payment practice concerning two out of fifty employees (four percent of [the defendant's] workforce) does not rise to the level of a common policy or plan by [the defendant] that violated the FLSA").

In fact, Thor submits evidence that the deductions are actually payments to its employees, which is consistent with the evidence submitted by Ms. Hayes. She doesn't challenge this evidence in reply. The drug test deductions on Ms. Hayes' paystubs have minus signs before them, whereas the purchase and sales tax deductions don't. ECF 48-5 at 6. And, if you add up all her deductions (without the drug test), you arrive at $3,002.44—but with the drug test, the deductions of $2,981.44 matches up. That difference is $21.00, which the employee benefits from receiving. Thor also submitted an affidavit from its director of financing attesting to this fact that Thor actually compensates employees for drug tests, not applies the cost as a deduction. *See* ECF 57-4. So, Ms. Hayes has not met her burden of showing a common plan that potentially violates the FLSA. She has not shown that others receive deductions for drug tests; instead, she has shown the inverse. She and others received credits for the drug tests on this record. *See also* ECF 48-8 at 3. The conditionally certified class will not include those subjected to alleged deductions for drug tests. Accordingly, Ms. Hayes' motion for conditional certification will be granted but limited with respect to the deductions class.

    C.    *Ms. Hayes' Purported Class Notice Must be Revised and Limited to Only the FLSA Claims She Has Met Her Burden of Certifying.*

The court won't rewrite the proposed class to include Thor's compensation system involving production incentive rates, as advanced softly by Ms. Hayes at oral argument. No claim is pending before the court alleging facts regarding a production incentive system. Ms. Hayes had the benefit of limited discovery and an amended complaint when she filed her motion for conditional certification and could have defined the purported classes as she desired. She and other affiants allege a piece-rate

system, consistent with her complaint, and therein will be the certified claim. The court won't develop her position without proper allegations and evidence to support them for purposes of this motion.

Thor has several objections to Ms. Hayes' proposed notice to potential opt-in plaintiffs: (1) it includes employees whose claims would be barred by the statute of limitations, (2) it includes employees whose wage deductions were not taken during overtime pay periods, and (3) it should be modified to ensure more fair notice of the issues.

"District courts have discretion to determine the scope and conditions of notice to potential members of a collective action brought under the FLSA." *Dietrich v. C.H. Robinson Worldwide, Inc.*, 2019 U.S. Dist. LEXIS 48555, 3 (N.D. Ill. Mar. 20, 2019) (citations omitted). This court will allow Ms. Hayes to use "the language of [her] choice in drafting the notice," subject to meritorious objections by defendants. *King v. ITT Continental Baking Co.*, 1986 U.S. Dist. LEXIS 29321, 6 (N.D. Ill. Feb. 13, 1986); *see also Watson v. Jimmy John's, LLC*, 2016 U.S. Dist. LEXIS 1437, 2 (N.D. Ill. Jan. 5, 2016).

Thor's first objection—that the proposed class would include employees whose claims are barred by the statute of limitations—is overruled. The FLSA requires that an action "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a); *Pizano v. Big Top Party Rentals, LLC*, 2018 U.S. Dist. LEXIS 81184, 9 (N.D. Ill. May 14, 2018). An FLSA lawsuit is commenced on the date when the complaint is filed; except, in the case of a collective or class action, it is commenced for each individual plaintiff when such written consent is filed. *See* 29 U.S.C. § 256.

There isn't enough on this record to say those employees who worked for Thor in 2016 are barred by the statute of limitations. That question is inappropriate at this stage, when Ms. Hayes' only burden is to show that others are similarly situated to her. *See Cisneros v. Jinny Beauty Supply Co.*, 2004 U.S. Dist. LEXIS 2094, 4 (N.D. Ill. Feb. 5, 2004) ("[t]he difference in the applicable limitations periods is not one that overrides the basic similarity of plaintiff's substantive claim and the possible substantive

14

claims of other plaintiffs"). The court makes no decision at this time as to whether future opt-in plaintiffs are time-barred by the statute of limitations. That will be determined later, on a fuller record.

Next, Thor says Ms. Hayes' purported deductions class is too broad. This objection is sustained. As discussed in Part B, *supra,* Ms. Hayes' deductions class cannot include alleged deductions for drug tests. The notice must be revised as such. Even more, the class doesn't specify that it only applies to individuals who received deductions *and* worked overtime hours in the same week. This latter part is an essential element to the FLSA claim, as admitted by Ms. Hayes. *See* ECF 58 at 11 ("Thor fails to appreciate, however, the fact that Plaintiff's FLSA illegal kickback claims are based upon *overtime violations*, not minimum wage violations.") (emphasis added); *see also id.* at n. 43 ("Illegal kickbacks violate the FLSA when they cut into either minimum wages or *overtime wages.* 29 C.F.R. § 531.35.") (emphasis added). It is likewise a reason that her deduction claim survived the second motion to dismiss. Ms. Hayes must make these revisions before distributing her proposed notice.

Thor also argues that Ms. Hayes' deduction class should be limited to those deductions that were taken for tools only. But Ms. Hayes alleges that she was subjected to deductions for "tools, equipment, and drug screen costs." ECF 46 ¶ 76. The parties have not briefed the appropriate definitions of "tools" and "equipment" and which potential plaintiffs fall into these categories. That can be argued at step two. Drug screen costs are excluded.

Last, Thor requests that the proposed notice include language regarding the potential consequences of joining the case and the prospect of their participation in discovery. This is a fair suggestion. *See Knox v. Jones Grp.*, 208 F. Supp.3d 954, 966 (S.D. Ind. 2016) ("Plaintiffs' notice . . . is approved with the addition of a phrase that 'a class member may be subject to obligations such as responding to discovery, giving a deposition, and testifying at trial' in the 'What happens if I join the lawsuit?' section."); *see Carrel v. MedPro Grp., Inc.*, 2017 U.S. Dist. LEXIS 62969, 31 (N.D. Ind. Apr. 26, 2017) (Springmann, J.) ("However, the class members may be subject to discovery, including

depositions, to determine their individualized damages. Accordingly, revisions to include reference in the Notice to this impeding discovery are warranted."). Ms. Hayes should also give nod to the consequences of an unfavorable result. *See Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, 2013 U.S. Dist. LEXIS 91617, 22 (W.D. Wis. Mar. 20, 2013) ("Plaintiffs have agreed to include the following phrase: 'If you do not prevail on your claim, court costs and expenses may possibly be assessed against the class.'"). It only seems prudent to advise future plaintiffs of their responsibilities and consequences if they join, so long as the language doesn't unfairly dissuade potential plaintiffs from joining.

The court has considered Thor's other objections and overrules them, as they are stylistic suggestions concerning the language included in the notice. *See King*, 1986 U.S. Dist. LEXIS 29321 at 6. The court will not engage in a wholesale rewrite of Ms. Hayes' proposed notice form.

## CONCLUSION

Ms. Hayes has met her step one burden to certify her FLSA claims as conditional collective actions. The court thus GRANTS her motion to conditionally certify the piece-rate and deductions classes (ECF 48), though limited in accordance with this opinion.

Because Ms. Hayes must revise her notice, the court ORDERS her to submit a supplemental notice on or before September 10, 2020. Thor's objections, if any, are not to exceed three pages and are due on or before September 17, 2020. The court ORDERS the parties to confer concerning a timeline for Thor to produce to Ms. Hayes the purported class member names, dates of employment, known addresses, and email addresses and advise the court of such agreed date in their submissions. This list must indicate which class (or both) to which the member belongs.

SO ORDERED.

September 1, 2020                             *s/ Damon R. Leichty*
                                              Judge, United States District Court