UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JENNIFER HAYES, individually and on behalf of those similarly situated, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) CASE NO. 3:19-CV-00375-DRL-MMG ) |
| THOR MOTOR COACH, INC. | ) ) |
| Defendant | ) |

***PLAINTIFF'S MOTION AND SUPPORTING MEMORANDUM OF LAW SEEKING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, SERVICE AWARD AND CLASS COUNSEL FEES***

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Jennifer Hayes ("Hayes") filed her combined Rule 23 class action and FLSA collective action lawsuit on May 10, 2019 against Defendant Thor Motor Coach, Inc. ("Thor").[1] Thor filed two different FRCP 12(b)(6) motions to dismiss.[2] The first was granted, with instruction that Hayes file an Amended Complaint that provided a detailed example of a piece rate-based overtime violation in at least one specific work week.[3] The Amended Complaint was filed on December 17, 2019.[4] The Court denied Thor's second Motion to Dismiss on June 11, 2020.[5]

Hayes filed her Motion to Conditionally Certify a FLSA Collective Action on January 27, 2020 and that motion was granted by the Court on September 1, 2020.[6] Following Court approval,

---

[1] ECF No. 1.
[2] ECF Nos. 17 and 49.
[3] ECF No. 43.
[4] ECF No. 46.
[5] ECF Nos. 66 and 74.
[6] ECF Nos. 48 and 75.

Notice was mailed to potential opt-in plaintiffs in mid-November 2020 and the 90-day notice period closed on February 17, 2021.[7]

The Parties engaged in a day of mediation on May 3, 2021, and reached a settlement that afternoon. That same day, the Parties entered into a written Settlement Memorandum of Agreement. The terms of the settlement are more fully set forth in the Stipulation of Class/Collective Action Settlement, filed with the Court on August 23, 2021 [Dkt. 125-1.]. The settlement can be summarized as follows:

- The total settlement amount is $1,100,000.00.

- There will be no reversion. All amounts will be distributed to class members or remitted to a *cy pres* fund. The Parties have selected Indiana Legal Services, Inc., as the charity to receive any *cy pres* funds.

- The employer portion of payroll taxes and costs of administration will be paid from the common fund.

- The amount reserved for net class funds is $683,272.18, which will be distributed approximately as follows:

    o <u>Bucket One – FLSA Collective Members</u>. Because approximately 85% of calculated unliquidated damages are FLSA damages, $580,781.35 is reserved to be distributed to those who opted-in to the FLSA Collective Action portion of the litigation. Each person in this group shall receive a payment based upon a formula that takes into account the number of weeks the individual worked and wages the individual was paid. It is estimated that this group includes approximately 1,080 members.[8]

    The FLSA collective action portion of the settlement has been administered and completed.

    o <u>Bucket Two – Rule 23 Class</u>. Because approximately 15% of calculated unliquidated damages are Rule 23 damages, $102,490.83 is reserved to be distributed to all employees who had one or more wage deduction taken from wages in the category "Purchase" and/or "Sales Tax Purchase." Each person in this group shall receive a payment of a pro rata amount of the

---

[7] ECF No. 96 at page 3 of 7, ¶ 4.C.i.
[8] To the extent that there are excess funds from this amount, they will be distributed to class and collective members.

2

> funds deducted. It is estimated that this group includes approximately 3,514 members.[9]

- One-third of the settlement amount (i.e., $366,666.66) is reserved for payment of attorneys' fees. Of this amount, $244,444.44 will be paid as part of the settlement of the Bucket One FLSA claims. This first payment has been made.

  After Final Approval of the Rule 23 Class Action settlement, the remaining $122,222.22 in fees shall be paid.

- $10,000.00 is reserved for a service payment, which was paid

- $25,600.22 is reserved for litigation costs.

- $14,461.00 is reserved as administration costs

No class member opted out of this settlement and no class member objected to the settlement.

## II. LEGAL ARGUMENT

### A. The Court Should Grant Final Approval of the Class Action Settlement

In the present case, the Class Action portion of the Settlement Agreement meets the fairness requirements for multiple reasons. First, prior to entering into the settlement, the Parties engaged in significant motion practice and significant discovery. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (In granting preliminary approval of the settlement, the court noted that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Second, there were significant obstacles to the Plaintiffs' recovery of a maximum amount. Discovery did not reveal ongoing violations of Indiana law, specifically the wage assignment statute at I.C. 22-2-6-2, as of some time in mid-January 2018. Therefore, additional disputes over

damages and liability arose. The claims could have been worth far less than the amount recovered in settlement, if further discovery showed that the Rule 23 Class spanned the short window of time between May 10, 2017 and January 15, 2018. Moreover, Defendant asserted that any damages the Rule 23 Class suffered in the form of unauthorized wage deductions must be set off against the value of items purchased with those deductions. If Defendant prevailed on its set-off defense, the claims would have been worth far less than the amount recovered in settlement. "Courts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Reamer*, 2014 WL 6388735, at **2, 8 (granting preliminary approval of settlement that awarded one hundred percent of wages deducted and about one third of the maximum liquidated damages available under Indiana law); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of the best possible recovery and noting courts have approved settlements amounting to 15% and 17% of the best possible recovery) (citations omitted); *Godshall v. Franklin Mint. Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of the best possible outcome to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (stating that an agreement securing between six and twelve percent of the potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendant denies liability, and the Parties disagree about the merits of the case. *See*

*Chapman*, 2015 WL 9478548, at \*\*7-8. Here, without a settlement, the comparatively lower value of the Rule 23 Class Action claims (when compared to the value of the FLSA claims) could quickly be consumed by the costs of litigation.

Finally, adding to the reasonableness of the settlement, and to quote from the Northern District of Indiana, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at \*7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at \*5 (N.D. Ind. Oct. 24, 2013)).

### B.  A Service Award to Lead Plaintiff Is Reasonable and Warranted

"Service or incentive awards serve the important purpose of compensating Plaintiff for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the Plaintiff. *Knox v. Jones Group*, 2017 WL 3834929 \*2 (S.D. Ind. Aug. 31, 2017). See also, *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929 at \*2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 \*8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at \*2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727 \*16 (N.D. Ill. Feb. 28, 2012).

In this case, the agreed upon $10,000 service award to Lead Plaintiff Jennifer Hayes was already approved and paid in the FLSA Collective Action portion of the settlement. To the extent the incentive award needs to be affirmed, Hayes requests that the Court please do so. Ms. Hayes was the original and only lead plaintiff in this case. She participated at all stages in gathering information, locating witnesses, participating in planning, discovery and, ultimately, making decisions regarding the settlement. The $10,000.00 service award agreed to by the parties and preliminarily approved by the Court is well within the realm of reasonableness of similar service awards within our Circuit. See *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566 * 3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award to two Plaintiff in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Co.*, 2016 WL 7451623 **3-4 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four Plaintiff in FLSA settlement for a total of $40,000 in service awards). *Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919 **5, 12 (W.D. Wis. Sept. 5, 2014) ($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions). Plaintiff requests final approval of the service award to the Lead Plaintiff Jennifer Hayes.

*C.  Plaintiff Seeks Final Approval of Class Counsel's Agreed Upon Fee Award*

*1.  The Market Price for Legal Services Supports Plaintiff's Motion for Attorney's Fees*

"In awarding attorneys' fees, courts ultimately must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Castillo v. Noodles & Company*, 2016 WL 7451626 *4 (N.D. Ill. Dec. 23, 2016), quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The district court must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed."

*Castillo*, 2016 WL 7451626 at *4, citing *Sutton*, 504 F.3d at 692. District courts "must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases ..." *Castillo*, 2016 WL 7451626 at *4, citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Class Counsel had a written contingent fee contract with Ms. Hayes providing for a contingent fee equal to one-third of the overall net recovery.

### 2. The Risk of Nonpayment Was Significant

Class Counsels' decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faces. At the outset of the representation, Class Counsel took "on a significant degree of risk of nonpayment ..." *Castillo*, 2016 WL 7451626 at *5, citing *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Class Counsel took this case on a contingent basis, meaning that there was a substantial risk that his firm would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

### 3. Class Counsels' Requested Fee Award is Fair and Reasonable

#### a. The Results and Benefits Conferred Upon The Class Justify The Fee Award

This settlement will provide Class Members with a substantial cash payment. The Settlement Agreement provides that defendant will pay a settlement amount of an additional $102,490.83 to a group of Rule 23 Plaintiffs and this sum is over and above the $580,781.35 already paid in settlement to the 1,080 opt in FLSA plaintiffs.

The settlement represents significant value given the attendant risks of litigation – even though recovery might be greater if Plaintiffs continued to litigate, overcame motions to decertify the class and collective action, succeeded on all claims at the summary judgment stage and/or trial, survived any appeal, and were able to collect.

The Settlement was vigorously negotiated by attorneys for the parties  Defendant was well represented by very experienced and skilled counsel. The final settlement was reached as a result of arms-length negotiations.

### b.  Continued Litigation Presented Significant Risks To The Class.

Continued litigation would pose significant risks.  While Plaintiff and Class Counsel believed Plaintiff would succeed in her claims, Defendant and its attorneys believed just as strongly in defendant's ability to successfully defend itself.  For example, Plaintiff had to survive two separate FRCP 12(b)(6) motions filed by Defendant and Defendant's challenge to her request for certification.

### 3.  Class Members Were Provided Notice of Class Counsels' Request For Fees.

Class Counsel provided written notice to all class members regarding the fees requested. No objections were made.

### 4.  Legal Standards For Awards of Attorney's Fees

The Indiana Wage Payment Statute imposes a mandatory award of a successful plaintiff's attorney's fees.  I.C. 22-2-5-2 ("the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys"); *R.L. Turner Corporation v. Wressell*, 44 N.E.3d 26, 38 (Ind. App. 2015).  The Indiana Wage Claims Statute incorporates I.C. 22-2-5-2 and imposes that same mandatory attorney's fee award against an employer in a successful statutory wage claim pursued by an Indiana plaintiff.  I.C. 22-2-9-4(b).  "The purpose of the fee shifting provision is to

deter employers from playing 'fast and loose with wage obligations' by imposing ... attorney's fees for non-compliant employers." *R.L. Turner Corporation*, 44 N.E.3d at 38; *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 706 (Ind. 2002).

In the context of this certified Rule 23 class action claim brought pursuant to the Indiana Wage Payment Statute, FRCP 23(h) governs attorney's fees and non-taxable costs. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FRCP 23(h)(1). Attorney's fees are "authorized by law," the Indiana Wage Payment Statute, so the attorney's fees will be paid separately to Plaintiffs' attorney pursuant to the statute and the fees will not come in any way from the damages awarded by judgment to the Plaintiff Class (the common fund).

Plaintiff requests final approval of Class Counsels' remaining $122,222.22 fee award, which was previously granted preliminary approval.

### III. CONCLUSION

For the reasons set forth above, Plaintiff requests that, after conducting the Final Fairness Hearing on January 13, 2022, the Court grant Final Approval of the Class Action Settlement Agreement, which was preliminarily approved on October 13, 2021 [Dkt. 126.], grant all requested attorney's fees, costs, expenses and the Lead Plaintiff service award, and order that class common funds be distributed to all participating class members. Plaintiff requests any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr., Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807

(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com

Hans A. Nilges
Nilges Draher LLC
7266 Portage St. NW, Suite D
Massilon, OH 44646
Phone: (330) 470-4428
Facsimile: (330) 750-1430
hans@ohlaborlaw.com

Robi J. Baishnab
Nilges Draher LLC
1360 E. 9th St., Suite 808
Cleveland, OH 44114
Phone: (234) 401-9444
Fax: (330) 754-1430
rbaishnab@ohlaborlaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing pleading was filed with the Court electronically on January 3, 2022. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.